UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| AMY CLARK, | : | |
| | : | Civil Action No. |
| Plaintiff, | : | |
| | : | **PLAINTIFF REQUESTS A** |
| -vs- | : | **TRIAL BY JURY** |
| | : | |
| COUNTY OF CHESTER; WILLIAM | : | |
| MANN, *individually*; and CHRISTOPHER | : | |
| PAWLOWSKI, *individually*; | : | |
| | : | **COMPLAINT** |
| Defendants. | : | |
| | : | |

Plaintiff, AMY CLARK ("Plaintiff" and/or "Ms. Clark") by and through her undersigned counsel hereby files this Civil Action Complaint against Defendants COUNTY OF CHESTER, WILLIAM MANN, *individually*, and CHRISTOPHER PAWLOWSKI, *individually*, and upon information and belief avers the following:

## NATURE OF THE CASE

Plaintiff complains of disability discrimination, failure to accommodate her disability, FMLA retaliation, and wrongful termination in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. 12101 *et seq.* ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951 *et seq.*("PHRA"), the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615 *et seq.* ("FMLA"), and Pennsylvania common law, and seeks damages to redress injuries Plaintiff suffered as a result of discrimination and retaliation due to her disability.

## JURISDICTION AND VENUE

1

1. This action involves a question of federal law under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* and the Family and Medical Leave Act of 1993.

2. This Court has supplemental jurisdiction over the Commonwealth causes of action under the PHRA and common law, as they arise from the same nucleus of operative fact.

3. Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants and worked in the county of Chester within the Commonwealth of Pennsylvania where the discrimination occurred.

4. Around June 2, 2025, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and dual filed with the Pennsylvania Human Relations Commission ("PHRC") alleging disability discrimination and failure to accommodate disabilities.

5. Around May 12, 2026, the EEOC issued Plaintiff a Notice of Right to Sue pertaining to her claims arising under federal law.

6. Plaintiff has therefore exhausted her administrative remedies pertaining to her federal claims under the ADA.[1]

7. Plaintiff has filed this Complaint within ninety (90) days of her receipt of the Notice of Right to Sue from the EEOC.

8. As more than one year has elapsed since Plaintiff dual-filed her Charge of Discrimination with the PHRC, Plaintiff has also exhausted her administrative remedies pertaining to her claims under the PHRA.

**PARTIES**

---

[1] Plaintiff's federal claims arising under the FMLA contain no similar requirement of administrative exhaustion, nor do her workers' compensation retaliation claims arising under Pennsylvania common law.

9.  Plaintiff AMY CLARK ("Plaintiff" or "CLARK") is an adult individual female who resides in the Commonwealth of Pennsylvania.

10. Defendant COUNTY OF CHESTER ("CHESTER") is a political subdivision and County of the Third Class of the Commonwealth of Pennsylvania.

11. At all times material, Defendant CHESTER operated the "Chester County Justice Center," located at 201 West Market Street, West Chester, PA 19380, where Plaintiff worked.

12. At all times material, Plaintiff was qualified for her position with Defendant.

13. At all times material, Defendant WILLIAM MANN ("MANN") was employed by CHESTER as Deputy Chief Information Security Officer.

14. At all times material, Defendant MANN held supervisory authority over Plaintiff.

15. At all times material, Defendant CHRISTOPHER PAWLOWSKI ("PAWLOWSKI") was employed by Defendant CHESTER as Chief Adult Probation Parole and Pretrial Services Officer.

16. At all times material, Defendant PAWLOWSKI held direct supervisory authority over Plaintiff.

17. At all times relevant to this complaint, Defendants employed more than twenty people and were subject to federal antidiscrimination statutes including the ADA.

**MATERIAL FACTS**

18. Around April 2021, Plaintiff began working for Defendant CHESTER, initially in the role of "Clerical Support Staff IV" for the Register of Wills and Orphans Court.

19. Around September 2022, Plaintiff transferred to the department of Probation, Parole, and Pretrial Services, working in the same role.

20. Plaintiff generally earned strong performance reviews and praise for her work with Defendants.

21. Around August 20, 2024, Plaintiff suffered a fall while at work resulting in injuries to both her knees and her hip, and was out of work for several days.

22. Plaintiff's major life activities including but not limited to the ability to stand, sit, walk, lift, and work were all affected by her injury.

23. In particular, Dr. James Costanzo (one of Plaintiff's treating physicians) diagnosed Plaintiff with osteoarthritis and labral tearing, further affirmed that Plaintiff's labral tear in her left hip was worsened by her injury, and that it had accelerated her need for a total hip replacement.

24. As of June 16, 2025, as part of Plaintiff's separate workers' compensation matter, Dr. Costanzo testified that Plaintiff's knee injury had improved yet not fully recovered, and she had not yet recovered from her hip injury.

25. Plaintiff accordingly attended several doctor's appointments in the following weeks to treat her injuries, and was required to also attend ongoing physical therapy appointments as a result, which began in mid-September 2024.

26. During this time, Plaintiff treated with several different physicians in order to treat her injuries and attempt to manage her resulting pain and weakness in her knees, legs, and hips, including injections and the aforementioned physical therapy.

27. One physician, Dr. Itai Gans, placed Plaintiff on a light-duty work restriction as a result of the ongoing treatment and her difficulty in recovering.

28. Plaintiff also requested multiple other accommodations as suggested by her physicians during this time, including the ability to take occasional time off to attend her physical therapy appointments as scheduled.

29. Despite this, Defendants refused to grant Plaintiff's requests, forcing her to instead use sick and/or vacation time to attend the appointments.

30. Apparently not satisfied with refusing her requests, Defendants then started insisting that Plaintiff's physical therapy appointments and related time off to attend them were "causing problems" and "stress" in the office, insisting that she attend them after work hours instead. Defendants even refused to allow Plaintiff to take unpaid time off in order to attend her appointments.

31. On another occasion, when Plaintiff suffered an allergic reaction directly related to her ongoing treatment around September 11, 2024, she reasonably requested a brief accommodation to work from home while she recovered from that specific incident, but Defendant MANN also refused that request.

32. Defendants further threatened Plaintiff with disciplinary action if she took any time off in order to remain out of work for that incident.

33. Defendants' harassment and constant badgering about Plaintiff's legitimate medical appointments and restrictions were so unyielding that Plaintiff ended up taking Family and Medical Leave Act ("FMLA") leave in order to attempt to deal with the undue stress that the situation was placing on her.

34. When Plaintiff returned to work following her temporary leave, Defendants then further harassed her by alleging without proof that Plaintiff had actually taken leave to go on a cruise, rather than for legitimate reasons.

35. Around December 23, 2024, Plaintiff was temporarily filling in for a coworker in another department when she erroneously emailed a password-protected document to a third party instead of a separate file that was intended to be sent.

36. Shortly after that, Plaintiff was called in to meet with CHESTER's management and was interrogated about her mistake, including being falsely accused of supplying the third party the password to access the document's contents.

37. Plaintiff admits that she had erroneously sent the wrong document, but did not take any steps to conceal her mistake. Rather, Plaintiff had promptly notified Defendant MANN about one of the incidents that Defendants accused her of, and had not even been aware of another of them, as she had not been informed until the subsequent interrogation.

38. Nevertheless, Defendants suspended Plaintiff around January 7, and then terminated Plaintiff approximately one week later, around January 14, 2025, alleging that her mistake constituted a serious violation leading to a data breach.

39. Notably, one of Plaintiff's non-disabled coworkers later confided to Plaintiff that she had also made the very same mistake with sending the password-protected file to a third party on several occasions, yet she was only suspended for ten days in response, rather than being terminated.

40. Defendant PAWLOWSKI admitted to the same in testimony during Plaintiff's workers' compensation hearing.

41. Defendants' termination of Plaintiff for the alleged "data breach" was therefore wholly pretextual.

42. Defendants accordingly unlawfully terminated Plaintiff in violation of the Americans with Disabilities Act due to her disability and related requests for accommodation.

6

43. Defendants further failed to engage in the interactive process with Plaintiff in unilaterally deciding to terminate her rather than allow any potential workplace accommodations.

44. Plaintiff was repeatedly targeted for adverse action including termination due to Plaintiff's membership in a protected class based upon disabilities and due to Plaintiff's requests for accommodation in the workplace.

45. As a result of Defendant's conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

46. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

47. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation which such employment entails.

48. Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

49. Plaintiff has further experienced severe emotional and physical distress.

50. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendant.

51. Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

52. The above are just some of the examples of the discrimination and retaliation to which Defendants subjected Plaintiff.

53. Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

**AS A FIRST CAUSE OF ACTION FOR DISABILITY**

**DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT**
**(As against Defendant CHESTER)**

54. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this complaint as fully as if they were set forth at length.

55. The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA") prohibits discrimination on the basis of a disability.

56. Plaintiff is an individual female who suffers from a chronic disability.

57. Defendants were aware of Plaintiff's disability at all times.

58. Defendants discriminated against Plaintiff by terminating her employment.

59. Defendants unlawfully discriminated against Plaintiff in violation of the ADA.

60. Plaintiff makes claims for all damages available to her as a result of Defendant's discrimination.


**AS A SECOND CAUSE OF ACTION FOR DISABILITY**
**DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT**
**(Failure to Accommodate Disability)**
**(As against Defendant CHESTER)**

61. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this complaint as fully as if they were set forth at length.

62. The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA") prohibits discrimination on the basis of a disability, including the failure to accommodate disabilities when doing so would not create an undue hardship for the employer.

63. Plaintiff is an individual female who suffers from a chronic disability.

64. Defendants were aware of Plaintiff's disability at all times.

65. Defendants failed to provide a reasonable accommodation to Plaintiff that was available and would have allowed Plaintiff to perform her essential job functions.

8

66. Plaintiff's accommodation would not have caused undue hardship to Defendant.

67. Defendants discriminated against Plaintiff by failing to accommodate her disability.

68. Plaintiff makes claims for all damages available to her as a result of Defendant's discrimination.

**AS A THIRD CAUSE OF ACTION FOR DISABILITY DISCRIMINATION UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT (As against Defendant CHESTER)**

69. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this complaint as fully as if they were set forth at length.

70. The PHRA § 955(a) states that "It shall be an unlawful discriminatory practice…(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

71. Defendant CHESTER took actions against Plaintiff in violation of the PHRA by discriminating against Plaintiff and ultimately terminating her on the basis of her disability.

72. Plaintiff accordingly makes claims for all damages available to her under the PHRA.

**AS A FOURTH CAUSE OF ACTION FOR DISABILITY
DISCRIMINATION UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT
(Failure to Accommodate Disability)
(As against Defendant CHESTER)**

73. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this complaint as fully as if they were set forth at length.

74. The PHRA § 955(a) states that "It shall be an unlawful discriminatory practice…(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

75. Defendant CHESTER took actions against Plaintiff in violation of the PHRA by discriminating against Plaintiff and failing to accommodate her reasonable requests for accommodations pertaining to her disabilities.

76. Plaintiff accordingly makes claims for all damages available to her under the PHRA.


**AS A FIFTH CAUSE OF ACTION FOR AIDING AND ABETTING DISCRIMINATION
UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT
(As against Defendants MANN and PAWLOWSKI)**

77. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this complaint as fully as if they were set forth at length.

10

78. The PHRA § 955(e) states that "It shall be an unlawful discriminatory practice…(e) For any person, employer, employment agency, labor organization or employe, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

79. Defendants MANN and PAWLOWSKI aided and abetted Defendant CHESTER's unlawful discriminatory practices perpetrated against Plaintiff.

80. Plaintiff accordingly makes claims for all damages available to her under the PHRA for Defendants' aiding and abetting of discrimination.

**AS A SIXTH CAUSE OF ACTION FOR RETALIATION
UNDER THE FAMILY AND MEDICAL LEAVE ACT
(As against all Defendants)**

81. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this complaint as fully as if they were set forth at length.

82. The Family and Medical Leave Act, as codified, 29 U.S.C. § 2615 *et seq.* ("FMLA") prohibits retaliation against a covered employee who exercises their rights under the FMLA.

83. Plaintiff was an eligible employee who requested and took FMLA leave while employed by Defendants.

84. Shortly after her return from approved FMLA leave, Defendants terminated Plaintiff.

85. Plaintiff accordingly makes all claims available to her under the FMLA for Defendants' retaliation.

**AS A SEVENTH CAUSE OF ACTION FOR WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY OF THE COMMONWEALTH OF PENNSYLVANIA**
**(As against all Defendants)**

86. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this complaint as fully as if they were set forth at length.

87. Following her workplace injury, Plaintiff filed for workers' compensation benefits from Defendant CHESTER.

88. Defendants unlawfully terminated Plaintiff because she suffered a work-related injury and in retaliation for filing a workers' compensation claim and pursuing her rights under the Workers' Compensation Act.

89. The termination was in violation of the public policy of the Commonwealth of Pennsylvania embodied in the Workers' Compensation Act.

**JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants, in an amount to be determined at the time of trial plus interest, including but not limited to, all emotional distress, back pay, front pay, liquidated damages, statutory damages, attorney's fees, costs, and disbursements of action; and, for such other relief as the Court deems just and proper.

12

Dated: June 23, 2026

**FREUNDLICH & LITTMAN, LLC**
*Attorneys for Plaintiff*

By: */s/ Nathaniel N. Peckham, Esq.*
Nathaniel N. Peckham, Esq.
1425 Walnut Street, Suite 200
Philadelphia, PA 19102
P: (215) 545-8500
F: (215 545-8510
E: *nathaniel@fandllaw.com*